## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

FRANK DERRON SHORT,

                Defendant.

_____/

CASE NO. 09-20150

HON. MARIANNE O. BATTANI

### ORDER DENYING MOTION TO SUPPRESS DEFENDANT'S STATEMENTS

Before the Court is a motion brought by Defendant Frank Short to suppress inculpatory statements, which he asserts was elicited in violation of his Fifth Amendment right against self-incrimination (Doc. No. 11).   The Indictment charges Defendant with a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), and 18 U.S.C. § 924(e) (armed career criminal).

## I. INTRODUCTION

On September 9, 2009, the Court held an evidentiary hearing to assess statements Short made at the Pontiac Osteopathic Hospital (POH), which the government seeks to introduce at trial.  Short was hospitalized after being shot.

The Court heard testimony from police officers, medical personnel, and Defendant's mother.  The Court also received six exhibits offered by the Government, which are photographs of the crime scene, and Defendant's exhibits 1-6, which are hospital records. At the conclusion of the evidentiary hearing, the matter was taken under advisement pending further review by the Court and receipt of Defendant's Supplemental Brief in

Support of His Motion to Suppress Statements and Plaintiff's response to the supplemental brief.   Based upon the evidence presented, the Court makes the following findings of fact.

## II.  FINDINGS OF FACT

Officer Crampton was dispatched to a Pontiac residence on December 17, 2008. A neighbor indicated that he heard screaming inside the house and that the house was a suspected drug house.   Crampton noticed blood on the snow-covered driveway and eventually found a blood-covered cell phone and a pistol on the ground outside the house. Crampton and another officer entered the house to check for victims and perpetrators. After he cleared the house, Crampton learned that the victim went to North Oakland Medical Center (NOMC).

Crampton went to NOMC and found Short in a trauma room.   Crampton testified that another officer was at the medical center, but he was the only officer to have contact with Defendant.   After Crampton identified himself, he asked Short what happened. According to Crampton, his questioning was based on his belief that Short was a victim, not a suspect.   Compton characterized Short as coherent, but nonresponsive to the questions.   Short gave no information so Compton advised Short to call if he wanted to talk. According to Compton, his attempt to elicit information lasted two to three minutes. During that time medical personnel were in and out of the room.

The next witness, Officer McAllister, also responded to the shooting.   He spoke to neighbors about the incident, talked to the other officers, and remained at the scene for fifteen to twenty minutes.   He likewise saw the gun and cell phone.

McAllister left the scene and drove to POH to interview the gunshot victim.  When McAllister arrived at the hospital, a nurse directed him to a private room where Short was being treated by medical staff.  According to McAllister, Short was uncooperative initially but eventually told McAllister that he was at the location to visit a friend named Nick.  Short gave three versions of the facts surrounding the shooting.  Short also stated that he sells marijuana, but this incident was not related to drugs, and that he did not shoot anyone, but the gun and cell phone belonged to him.  He stated he dropped the gun in the driveway.  Short did not want the police to find the shooter and offered no information as to the identify.

McAllister, who was not in uniform, was the only police officer in the room with Short.  McAllister described Short as coherent and alert.  As McAllister was leaving the room he met Short's mother in the hallway.  After McAllister explained that her son refused to identify the shooter, the two returned to the room.   McAllister testified that he subsequently took Ms. Short out of the room because she became agitated.

Short's mother, Janet Short, stated that her son did not speak to her at all.  She testified that two police officers came into the room while she was there, including an officer she knew, spoke to her and left.  She testified that she was not present when McAllister questioned her son, but that McAllister gave her his card and told her to try to find out who did this to her son.  McAllister expressed concern for her family because of the shooting.

Kristin Krawczyk, a registered nurse, monitored Short's condition after he was admitted to POH.  She reviewed Defendant's medical records and testified that on the

Glasgow Coma Scale, Defendant received the highest overall score.  She stated that Short was never disoriented or confused and that he was able to respond to verbal commands.

Finally, Dr. Nikolai Butki, an emergency room physician, testified that Defendant had been given medication to treat pain.  He stated that the drugs could cause drowsiness, but that Short was able to converse when awake and respond to questions.

## III.  ANALYSIS

The Fifth Amendment protects  a defendant from being "compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his rights under the Fifth Amendment. Miranda v. Arizona, 384 U.S. 436,478-79 (1966); see also United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998).  "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial."  Stansbury v. California, 511 U.S. 318, 322(1994); Salvo, 133 F.3d at 948.

The parties dispute whether Short was in custody.  The Court assess the totality of the circumstances to assess whether the restraint on Short's freedom rises to the level associated with formal arrest.  California v. Beheler, 463 U.S. 1121, 1125 (1983).  A review of the "objective circumstances of the interrogation" involves consideration of the location of the interview, the length and manner of questioning, whether the individual possessed unrestrained freedom of movement during the interview, and whether the individual was told he need not answer the questions.  See Stansbury, 511 at 323; United

States v. Swanson, 341 F.3d 524, 529 (6th Cir. 2003).

In this case, it is undisputed that Short was hospitalized after being shot, was in pain, and had been medicated.  Defendant argues that his freedom to leave the hospital was impeded by his need for treatment.  There were officers posted outside his room.  In addition, the police questioned Short twice, once at NOMC and a second time at the POH.  He concludes that he was effectively in custody when he was questioned by McAllister without having been given his Miranda warnings.  The Court disagrees.

First and foremost, Short was not a suspect at the time of the questioning; he was the victim of a crime.  The police were present to protect him from the shooter, and their presence cannot be characterized as coercive.  The police had not restrained Short, nor did they isolate him.  Other people were allowed in the room, including his mother.  Despite the pain medication that had been given to Short, he was coherent.  The mere fact that this interaction took place in the hospital where Defendant was receiving medical treatment does not constitute a restraint on his freedom.  When Short stopped talking, the officers left.  Moreover, the focus of the questioning distinguishes this "interrogation" from something akin to a formal arrest.  Short was never asked about ownership of the gun, he was being asked to identify the individual who shot him.  In sum, the Court finds no violation of the Fifth Amendment.

In the alternative, Defendant asserts that even if he was not in custody, his statements must be suppressed because they were elicited in violation of his due process rights.  The Due Process Clause of the Fourteenth Amendment prohibits the admission of coerced confessions procured by means "so offensive to a civilized system of justice

that they must be condemned." Miller v. Fenton, 474 U.S. 104, 109 (1985). To determine whether a confession has been elicited by means that are unconstitutional, a court looks at the totality of the circumstances in assessing "whether a defendant's will was overborne in a particular case." Schneckloth v. Bustamonte, 412 U.S. 218, 225, (1973). Factors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep. Id. at 226.

Additional factors to be considered are enumerated in 18 U.S.C. §3501. No one factor is dispositive of whether a confession was voluntary; therefore, all factors must be assessed. 18 U.S.C. § 3501(b). The factors are:

> 1. the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest but before arraignment;
>
> 2. whether such defendant knew of the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,
>
> 3. whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,
>
> 4. whether or not such defendant had been advised prior to questioning of his right to assistance of counsel, and
>
> 5. whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

Id.

In this case, Defendant had involvement with the criminal justice system prior to this interaction. The contact with the police officers was brief, and the topic of gun ownership

6

was initiated by Defendant.   There is no evidence before this Court suggesting that the police used coercive tactics.   There is no evidence to show that the pain medication render Defendant's statements involuntary:   the testimony of the nurse and treating physician fail to establish an impairment to Short's cognitive or volitional capacity. Therefore, the Court finds no violation of Defendant's due process rights.

## IV.  CONCLUSION

Accordingly, the Court  **DENIES** Defendant's motion to suppress.

**IT IS HEREBY ORDERED** that the final pretrial and/or plea cut-off conference is set for **Nov. 5, 2009**, **at 3:30** p.m. and trial will begin on **Nov. 17, 2009, at 9:00** a.m.

**IT IS SO ORDERED.**


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


Date:  October 8, 2009


## CERTIFICATE OF SERVICE

Copies of this Order were served upon Counsel of record on the above date electronically.

s/Bernadette M. Thebolt
Case Manager


7